# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

SUZANNAH M. LOAR,[1]

        Plaintiff,

-vs-                                      Case No.  2:10-cv-593-FtM-29SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION[2]

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on Plaintiff, Suzannah M. Loar's Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for disability insurance (Doc. #1) filed on September 24, 2010.  The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #22) on March 30, 2011.  The Commissioner filed its Memorandum in Support of the Commissioner's Decision (Doc. #23) on May 26, 2011.  Thus, the Motion is ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] Various spellings of Plaintiff's first name were indicated in the record.  Plaintiff indicates that her name is Suzannah M. Loar, but that she has used the names Suzanna and Suzanne. (Tr. 104).

[2] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. § 405(g).

# FACTS

## *Procedural History*

Plaintiff filed an application for Supplemental Social Security Income (SSI) on August 28, 2007, alleging disability beginning as of her protective filing date of July 20, 2007. (Tr. 97-103).[3] The Agency denied this application initially on February 15, 2008, and on reconsideration on August 1, 2008. (Tr. 55-58, 79-81, 83-84). Administrative law judge (ALJ) Robert Spurlin held a video hearing on June 1, 2010, from Ft. Lauderdale, Florida, with claimant appearing in Ft. Myers, Florida. (Tr. 32-52). The ALJ issued an unfavorable decision dated June 18, 2010, denying Plaintiff's claims. (Tr. 59-70). The Appeals Council denied Plaintiff's request for review on July 30, 2010, making the hearing decision the final decision of the Commissioner. (Tr. 1-6). This case is ripe for review under 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g).

## *Plaintiff's History*

Plaintiff, Suzannah M. Loar, was born on March 21, 1973, and was 37 years of age at the time of her hearing and 34 years old on the alleged date of onset. (Tr. 41). She finished high school but was in special education classes and has difficulty with comprehension (Tr. 40).[4] Her work history shows that she held a variety of jobs in the fast food industry as both a cook and a cashier. (Tr. 43). Most of these jobs were of short duration, with the longest one lasting 8 months. She was

---

[3]On the same day, Plaintiff filed an application for a period of disability and Disability Insurance Benefits (DIB); however, her DIB application was denied because she lacked sufficient quarters of insurance to be covered for such benefits. (Tr. 53-54, 75-77, 104-08, 117-18). Plaintiff did not further appeal the Agency's determination regarding her claim for DIB.

[4]The record seems mixed as to whether Plaintiff was actually enrolled in special education classes. Her records at JBH reflect that she completed 12th grade with some special education classes (Tr. 258).

unable to hold a job because she was always getting fired.  Plaintiff testified at the hearing before the ALJ that she last worked in August 2004 in a fast food job (Tr. 42, 67), but indicated on a Disability Report, Form SSA-3368, that she last worked on August 1, 2005, at which time she was fired for not attending work.  (Tr. 124).  While Plaintiff did look for a job during part of the relevant period, she was never hired.  (Tr. 42, 69, 223, 225-37).  During this time she applied for jobs, she did so out of necessity and desperation, not because she felt able to work.  She was trying to provide for herself and her three children, ages 16, 15, and 11.  (Tr. 42, 69).  Plaintiff alleges she is disabled by a combination of physical and mental impairments, including back pain, attention deficit disorder, depression, anxiety, post traumatic stress disorder, fatigue, and an ankle condition.  (Tr. 42, 44-45, 124).  Plaintiff has psychological problems that began at an early age.  At age16 she was removed from her home after undergoing physical abuse from her mother and sexual abuse from her father's friends (Tr. 202).

*Medical Evidence*

## Childhood Trauma & Medical Issues

Plaintiff's problems began during her childhood.  She was physically abused by her mother, and sexually abused by her father and his friends.  (Tr. 202).  Her mother broke her nose at age 16. (Tr. 202).  She suffered a skull fracture at age 5.  (Tr. 202).  From ages 11 to 16, she was sexually molested by her father and was raped by two of her father's friends at age 12 or 13, and age 14, respectively.  (Tr. 195).  Plaintiff attempted to commit suicide on three separate occasions between the ages of 8 to 16.  (Tr. 201, 203).  She also has clear memories of her mother trying to commit suicide.  (Tr. 203).  Plaintiff was removed from her parent's custody at age 16 and placed on Prozac. (Tr. 202).  Plaintiff eventually went to live with her grandmother, who became her primary caregiver.

(Tr. 194). Claimant married and she and her spouse had three children. In addition to her being abused by her parents, her ex-husband physically and sexually abused her during the marriage and physically abused two of their children. (Tr. 203).

In a psychiatric evaluation form completed by Irene Warburton, an Advanced Nurse Practitioner (ARNP) and dated January 13, 2002, Plaintiff related that she had been taking Prozac and Paxil in the past and was currently taking Serzone and Wellbutrin as prescribed by Dr. Schaerf, M.D., a psychiatrist (Tr. 201). Dr. Schaerf referred her to Ruth Cooper for further treatment. Her multi-axial impression read as follows: Axis I: Major Depression, recurrent; . . . Axis V: GAF[5] – 60 (Tr. 203).

On June 30, 2006, Plaintiff went to the emergency room at Lee Memorial Hospital for pain and swelling in her left ankle after she had fallen over one of her children's toys. (Tr. 182). At the emergency room, her left ankle was x-rayed and no fracture was seen. (Tr. 181). The diagnosis was a left ankle sprain. She was provided with crutches, placed on no weight bearing for two days, and given Motrin 800 and Ultram as well as referral to an orthopedist. (Tr. 181-83). She was seen at the emergency room at Lee Memorial Hospital on July 23, 2007 for an allergic reaction. Her medical history indicated that she had a history of depression and was currently taking Lexapro and Wellbutrin. (Tr. 179).

Plaintiff self-referred to Ruth Cooper and was seen on August 27, 2007. (Tr. 186-93). Her

---

[5]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social, and occupational functioning of an individual on a mental health scale of 0-100. GAF of 51-60: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or coworkers), DSM-IV-TR, pg. 47.

records show that she presented with a depressed mood and only fair insight and judgment. (Tr. 186). It was further noted that she suffered from chronic ankle pain and tended to isolate from other people. (Tr. 187). With respect to abnormal symptoms, the notes indicate that her insight and judgment were fair, she had ideas of worthlessness, racing thoughts, a depressed mood and affect, sleep disturbances, spontaneous speech and panic attacks. It was also noted that she was "unable to work." (Tr. 189). The "provisional diagnosis" on a multi-axial scale for this date was Axis I: Major Depression with anxiety; Axis II: deferred (DSM IV Code 799.90), Axis III: knee, back and headaches; Axis IV: economic, social, primary, employ[ment], other, and Axis V: GAF was 55. (Tr. 193). The narrative section of the report references poor coping skills, poor sleep, poor concentration and inability to keep a job. Plaintiff also has difficulty leaving the house. (Tr. 193). The treatment plan was for counseling and an appointment with an M.D. (Tr. 193).

On September 5, 2007, she met with Dr. Norman Kruedelbach, Ph.D., at Ruth Cooper. They discussed her history of abuse and her panic attacks. (Tr. 185). Dr. Kruedelbach next saw Plaintiff on October 10, 2007 for individual therapy. At that time, he observed her to be depressed and she complained of anxiety and conflict with other people. He also found that she was anhedonic, sad, lethargic, and complaining of having difficulty falling asleep. She related a feeling of worthlessness and weight gain as a result of overeating. She had been on Wellbutrin and Lexapro until August 2007, when she ran out of these medications. In the past, she had received prescriptions for these medications from Dr. Pizaro who had stopped practicing. Plaintiff expressed concern that she was becoming more depressed and wanted to see if she could be evaluated for psychiatric medication. (Tr. 224). Plaintiff continued to see Dr. Kruedelbach for individual therapy. On October 18, 2007, they discussed her children's psychological problems including ADHD, anxiety and depression.

They also discussed her tendency to "zone out" in stressful situations. (Tr. 222).

Plaintiff was seen at the JBH Behavioral Health Systems, LLC (JBH) on March 26, 2009. At that time, her "bio-psychosocial assessment" indicated that her major complaints were "Anxiety, Depression, ADD, PTSD." (Tr. 281). Plaintiff related that she experienced anxiety around other people and had a long history of psychological problems. Her records also indicate that she had been treated for anxiety and depression at Ruth Cooper Center, and by Dr. Pizarro. In order to attempt to deal with her psychological problems, Plaintiff had been on Serzone, Wellbutrin and Adderall. (Tr. 283). She felt that her anxiety kept her from being able to keep a job and that she tried to avoid people because they scare her. (Tr. 284-85). On March 26, 2009, her therapist described Plaintiff as having anxiety, depression in mood and affect as well as poor sleep. He characterized her as being tense and nervous. Finally, it was noted that she suffered from poor socialization.

Based on this lengthy assessment, her multi-axial diagnosis was Axis I: Social Phobia, Anxiety disorder, Dysthymic disorder; Axis II: no diagnosis; Axis III: childhood fractured skull, headaches, and body pain. Her Axis VI factors were: problems related to the social environment, occupational problems, economic problems, problems with primary support group and housing problems. Her GAF score was 40.[6] With respect to her "Current Psychiatric Status" the following signs and symptoms were assessed and recorded:

Mild: obsessions/compulsions and impulsiveness.

_____

[6]GAF score of 31-40 – some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.) DSM-IV-TR pg. 48.

> Moderate: depressed mood, somatic complaints, impaired concentration, paranoia and panic attacks
>
> Severe: anxiety, sleep disturbance and impaired memory. (Tr. 276).

Although prepared in part by a non-physician, this treatment plan was signed by a physician. (Tr. 276-80).

On November 20, 2009, eight months later, Plaintiff's treatment plan at JBH was updated. (Tr. 253-57). The certifying physician for this plan was Dr. Omar Rieche, M.D., a psychiatrist. The multi-axial diagnosis contained in the plan read, Axis I: Social Phobia, Anxiety disorder; Axis II: deferred; Axis III: childhood fracture of skull, body pain. The following were checked on Axis IV: No stressors, problems related to social environment, occupational problems, economic problems and problems with primary support group. Her GAF was 45. (Tr. 253). Her treatment plan recommended both individual therapy and medication therapy for the lessening of anxiety and depression. (Tr. 254).

Plaintiff continued to receive treatment at JBH from December 22, 2009 until April 29, 2010 (Tr. 291-96). These treatment notes indicate that Plaintiff continues to experience depression, sadness and social isolation. These notes specify that Plaintiff should continue medication and counseling therapies. (Tr. 291-96).

On May 21, 2010, Dr. Omar Rieche of JBH completed a mental residual functional capacity questionnaire. On his questionnaire, Dr. Rieche indicated that Plaintiff is "extremely" impaired in her:

> (1) ability to work in coordination with others or in proximity of others without distracting them or exhibiting behavioral extremes;
> (2) ability to respond appropriately to co-workers or peers;
> (3) ability to perform at production levels expected by employers;
> (4) awareness of normal hazards and take necessary precautions;

(5) ability to behave predictably, reliably and in an emotionally stable manner; and
(6) her ability to tolerate customary work pressures (Tr. 298-300).

He indicated that she had marked limitations in:

(1) ability to accept instruction and appropriately respond to criticism from supervisors;
(2) ability to relate to the general public and maintain socially appropriate behavior;
(3) ability to perform and complete work tasks in a normal work day or week at a consistent pace;
(4) ability to process subjective information accurately and to use appropriate judgment;
(5) ability to carry through instructions and complete tasks independently;
(6) ability to maintain attention and concentration for more than brief periods of time;
(7) ability to respond appropriately to changes in the work setting;
(8) ability to remember locations and workday procedure and instructions and
(9) ability to maintain personal hygiene and appearance (Tr. 298-300).
In the narrative section of the questionnaire, he wrote that she has shown a pattern of suffering debilitating panic symptoms and that there is no reason to believe that that pattern would not continue (Tr. 301).

## Non-Examining Reviewers

Plaintiff's file was reviewed by two non-examining psychological professionals, Drs. Arthur Hamlin, Psy.D., and Martha Putney, Ph.D. (Tr. 207-20; Tr. 238-51). Dr. Hamlin completed a Psychiatric Review Technique Form (PRTF) on February 14, 2008, where he checked the box labeled "Insufficient Evidence." (Tr. 207). In the narrative section of his report, he noted that Plaintiff missed a consultative examination and wrote: "Additional information was needed to make a determination" and "[m]ental is insufficient." (Tr. 219).

Plaintiff testified that she missed her consultative examination because of transportation problems. (Tr. 37). On July 31, 2008, Dr. Putney also checked the box labeled "Insufficient Evidence" and noted that her evaluation was at the reconsideration level of review and that there was still insufficient information to make a determination. (Tr. 238, 250).

## Consultive Examinations

The only consultative examination Plaintiff underwent was a physical examination performed by Dr. Kenneth A. Berdick, M.D., at the request of the Office of Disability Determination. (Tr. 205-06). Dr. Berdick wrote that Plaintiff stated that her major problems were depression and ADHD. He recorded that Plaintiff had been on Concerta which did not work well and was currently on Wellbutrin and Lexapro. (Tr. 205). Physically, she complained of occasional pain in her neck, shoulders, arms, legs and hips. Upon examination, he found Plaintiff to be asymptomatic, no presence of swelling or warmth. Plaintiff also had a full range of motion, no problems with her hands or gait. Plaintiff did complain of her "ankles turning in." She denied any shortness of breath, gastrointestinal, genitourinary, or neurological problems. (Tr. 205). During his conversation with Plaintiff he discovered that she stopped working because of migraine headaches and depression. He also learned that she performed the activities of daily living (ADLs) of a typical mother and that she was currently looking for a job. He concluded that her mental status was "reasonable" and that he could not find any reason why she should not be gainfully employed. (Tr. 205-06).

### Administrative Law Judge's Decision

On June 18, 2010, after reviewing all of the evidence and testimony, ALJ Robert Spurlin issued a "Notice of Decision - Unfavorable." (Tr. 62-70). He found that the claimant had not engaged in substantial gainful activity since July 20, 2007, the application date. (Tr. 62). The ALJ determined Plaintiff has a single severe impairment of being status post-left ankle sprain. (Tr. 64, Finding No. 2). The ALJ assessed Plaintiff's residual functional capacity (RFC) and concluded she

had the capacity to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c).[7]

(Tr. 66-69, Finding No. 4). The ALJ found Plaintiff could perform her past relevant work as a fast

food worker, which is light in exertional level. This work does not require the performance of work-

related activities precluded by the claimant's RFC. (Tr. 69-70). Thus, Plaintiff was not disabled

under the Social Security Act. (Tr. 70, Finding No. 6). The ALJ found that her only "severe

impairment" was her ankle impairment and that her mental impairments were "non-severe." (Tr.

64, Finding No. 2). Therefore, she was not disabled since July 20, 2007, through the date of the

decision. (Tr. 70, Finding No. 6).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v.

Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S.

389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th

Cir. 1988)). In evaluating whether a Plaintiff is disabled, the ALJ must follow the sequential inquiry

described in the regulations (20 C.F.R. §§ 404.1520(a), 404.920(a)). The inquiry requires the ALJ

to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The

steps are as follows:

Step 1. Is the Plaintiff engaged in substantial gainful activity? If the Plaintiff is engaged in such

activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

---

[7]The regulations define medium work as that which involves lifting
no more than fifty pounds at a time with frequent lifting or carrying of
objects weighing up to twenty-five pounds. If a person can do medium
work, then he or she can also do sedentary and light work. 20 C.F.R. §
416.967(c) (2011).

Step 2. Does the Plaintiff suffer from a severe impairment? If not, then the Plaintiff is not disabled. If there is a severe impairment, the ALJ moves on to step three.

Step 3. Does the Plaintiff's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the Plaintiff is disabled. If not, the next question must be resolved.

Step 4. Can the Plaintiff perform his or her former work? If the Plaintiff can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the Plaintiff is not disabled. If the Plaintiff cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67

F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve (12) months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the plaintiff is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states that the ALJ committed several errors for which this case should be revered and remanded for further development or for payment. Specifically, Plaintiff alleges: (1) the ALJ erred in not finding Plaintiff's mental impairments to be "severe;" (2) the ALJ's residual functional capacity finding that claimant is capable of a full range of medium work is not supported by substantial evidence. Plaintiff alleges that both of these errors related to the ALJ's failure to follow the treating physician rule and properly consider the medical evidence in the record; (3) the ALJ failed to consider all of Plaintiff's impairments in combination including those found to be

"severe" and non-severe." 20 C.F.R. § 416.945(a)(3); (4) the ALJ's finding that Plaintiff is able to return to her past relevant work was also in error since there is no development or discussion of both the physical and mental requirements of her past relevant work. The Court will consider each of these issues below.

### 1. Whether the ALJ erred in not finding Plaintiff's mental impairments to be "severe"

The Plaintiff argues that the ALJ erred in not finding Plaintiff's mental impairments to be "severe" at Step 2 and the ALJ's residual functional capacity (RFC) finding that claimant is capable of performing a full range of medium work is not supported by substantial evidence. In further regard to Plaintiff's impairments, Plaintiff argues that the ALJ failed to consider all of Plaintiff's impairments in combination including those found to be "severe" and "non-severe." Plaintiff alleges that these errors relate to the ALJ's failure to follow the treating physician rule and properly consider the medical evidence of record.

Step 2 of the sequential evaluation requires the ALJ to make a determination as to whether claimant's impairments are "severe" or "non-severe." The only severe impairment found by the ALJ in this case was "status post left ankle sprain." (Tr. 64, Finding No. 2). Plaintiff argues that the majority of medical evidence in this case is related to Plaintiff's mental impairments including records from JBH Behavioral Health Systems and Ruth Cooper. (Tr. 252-301, 184-203, 221-31). Specifically, Plaintif points out that she suffers from generalized anxiety disorder, major depressive disorder, and recurrent and social phobia. The Plaintiff argues that even though the ALJ acknowledged that Plaintiff had the medically determinable mental impairments of generalized anxiety disorder and dysthymic disorder, he found that considered either singly or in combination that they did not cause more than a minimal limitation on claimant's ability to perform the basic

mental requirements of work activities and therefore were "non-severe." Plaintiff argues this was in error and that the ALJ should have found that she had severe mental impairments at Step 2 and that the ALJ had little medical evidence supporting its position. The Government argues that substantial evidence supports the ALJ's finding that Plaintiff failed to meet her burden of demonstrating that her mental impairments limited her ability to perform basic work activities. (Tr. 64-69). The Government further points out that at Step 2 the ALJ did find that Plaintiff had a severe impairment - that she was "status post left ankle sprain" - and that the ALJ therefore found in Plaintiff's favor at Step 2 and could not have committed any error at Step 2 as he found a severe impairment and moved on to Step 3.

At the second step in the evaluation process, the ALJ is to "consider the medical severity of the [Plaintiff's] impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination "significantly limit" the claimant's "physical or mental ability to do basic work skills." Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)). At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005). An impairment or combination of impairments is not severe if it "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." Id. (citing 20 C.F.R. §

404.1521(a),(b)). Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. <u>Jones v Department of Health and Human Services</u>, 941 F.2d 1529, 1533 (11th Cir. 1991). An ALJ properly considers the Plaintiff's impairments in combination if he states that the Plaintiff does not have an impairment, or combination of impairments of sufficient severity to prevent him for engaging in any substantial gainful activity. <u>Gibbs</u>, 156 Fed. Appx. at 246 (citing <u>Wheeler v Heckler</u>, 784 F.2d 1073, 1076 (11th Cir. 1986)).

In this case, contrary to Plaintiff's assertions, the ALJ thoroughly considered Plaintiff's mental disorders and the record evidence of the disorders in reaching his opinion that Plaintiff's mental impairments were "non-severe" and concluded that "[t]he medical records fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (Tr. 67). The ALJ went on to consider the consultive examination performed by Dr. Kenneth A. Berdick, M.D. Dr. Berdick's physical exam revealed that Plaintiff had no abnormal findings and was asymptomatic and he stated that in spite of Plaintiff's complaints of some pains, none were noted in the exam, and that she is spending much of her time job hunting. (Tr. 205-06).

The ALJ also considered the evaluations of two Agency reviewing consultants, Drs. Arthur Hamlin and Martha Putney, who found in February and July 2008 that there was insufficient evidence to conclude that Plaintiff had a severe mental impairment. (Tr. 65, 207, 219, 238, 250). With regard to these doctors, the ALJ stated:

> The psychiatric review technique assessment of Dr. Arthur Hamlin, Psy.D. and Dr. Martha Putney, Ph.D., support a finding that the claimant's mental impairments are not severe (Exhibits 4F and 6F). Notably, both Dr. Hamlin and Dr. Putney indicated that there was insufficient evidence to find that the claimant had a severe mental impairment.

(Tr. 65). The Plaintiff argues that the ALJ misinterpreted the phrase "insufficient evidence" to mean that claimant had no mental impairments, but that this interpretation is inconsistent with Dr. Hamlin's statement, "Additional information was needed to make a determination" (Tr. 219) and that neither doctors checked the boxes of their respective PRFTs reading "no medically determinable impairment" or "impairment(s) not severe." (Tr. 207, 238).

Plaintiff's argument with regard to these doctors is not well taken. Even though Drs. Hamlin and Putney were unable to opine whether Plaintiff had a severe mental impairment, their assessments support the ALJ's conclusion that Plaintiff failed to meet her burden of providing disabling mental impairments. The ALJ considered Dr. Hamlin and Dr. Putney's evaluations, along with all of the other evidence in the record, to reach the finding of non-severe mental impairments, which the Court finds is supported by substantial evidence in the record.

Plaintiff further argues that the findings of Dr. Omar Rieche, M.D. should have been given more weight and that if his findings were given more weight, Plaintiff's mental impairments would have been found to have been "severe." The ALJ gave Dr. Rieche's opinion "little weight" stating that it was not substantiated by any clinical findings, diagnostic testing, or treating records showing that Dr. Rieche had treated Plaintiff on a continuing basis or for a substantial amount of time and that his opinion was inconsistent with the record as a whole. (Tr. 51).

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439-1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not

inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580 (11th Cir. 1991) (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at 1334.

In this case, the ALJ properly rejected the May 21, 2010 opinion of Dr. Rieche, a psychiatrist at JBH Behavioral Health Systems. (Tr. 298-301). Dr. Rieche completed a questionnaire as to Plaintiff's mental residual functional capacity at the request of the Plaintiff's attorney dated May 21,

2010. Although Plaintiff contends that the ALJ should have granted controlling weight to Dr. Rieche's opinion as a treating physician, Dr. Rieche never examined Plaintiff, and thus he was not her treating physician. (Tr. 51). The ALJ's accordance of little weight to Dr. Rieche was supported by substantial evidence in the record and thus will be not disturbed by this Court.

*2. Whether the ALJ's RFC finding that claimant is capable of a full range of medium work and could return to her past relevant work is supported by substantial evidence*

The ALJ found that Plaintiff had the RFC to perform a full range of medium work. (Tr. 66, Finding No. 4). The ALJ further determined that Plaintiff could return to her past relevant work as a fast food worker, which is considered light work. (Tr. 69). Plaintiff alleges that there does not seem to be any medical evidence supporting this RFC as the RFC contains no mental impairments and this ALJ's analysis of Plaintiff's past relevant work was based solely on a comparison of physical capabilities. (Tr. 69-70). Additionally, Plaintiff argues that the ALJ's own finding that Plaintiff has a severe impairment of "status post left ankle sprain" would seem inconsistent with lifting up to 50 pounds with the frequent lifting and carrying of objects weighing up to 25 pounds, as required by medium work. (Tr. 66, Finding No. 4). Because the ALJ determined that Plaintiff could perform work at a medium RFC, the ALJ found that the claimant was able to perform her past relevant work as a fast food worker as it is actually and generally performed. (Tr. 70). Plaintiff alleges that in making this determination, the ALJ merely cited the DOT citation, 311.472-010 Fast Food Worker, for Plaintiff's past relevant work in fast food, but the ALJ did not provide any discussion of the duties or requirements of Plaintiff's past relevant work, only the citation. The Plaintiff notes upon her review of the DOT citation, that this job requires that the person be capable of attending to the needs of others and requires contact with other people and coworkers which seems incompatible with someone with panic attacks and social phobia. Thus, the Plaintiff argues

that the ALJ erred in finding that Plaintiff is able to return to her past relevant work since there was no development or discussion of both the physical and mental requirements of her past relevant work.

The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity (RFC) and based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience the RFC is considered in determining whether the claimant can work. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238. That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing 20 C.F.R. § 404.1567).

The Court finds that the ALJ's RFC finding is based on substantial evidence in the record. As discussed above, the ALJ's finding that Plaintiff's mental impairments were "non-severe" is supported by substantial evidence and therefore were not considered debilitating enough by the ALJ to preclude Plaintiff from performing medium work. The ALJ found that Plaintiff performed a significant range of activities that were inconsistent with the limitations she alleged. (Tr. 64-69). And the ALJ found that the Plaintiff's work history case doubt upon her credibility. (Tr. 68-69). Although Plaintiff told Dr. Berdick that she stopped working in 2006 due to depression and

headaches (Tr. 205), she testified that she last worked in 2004, when she was fired for "no call and no show" (Tr. 42-43), which was unrelated to her alleged mental disability. The ALJ noted this fact when making his RFC determination:

> There is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairment. The claimant testified that she last worked in August of 2004. The claimant testified that her last job was as a fast food worker doing cooking and as a cashier for 8 months. She testified that she stopped work because she got fired. The claimant stated that her daughter was sick and she had a note from the doctor saying that she could not go back to daycare. The claimant testified that she took it to the manager who did not give it to the other manager and she got fired due to no call now show. She stated that she got fired a lot from other jobs for various reasons. She stated that most of the reasons were false.

(Tr. 68).

While the performance of everyday tasks cannot be used to make a determination that the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. *See* Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise). *See* Norris v. Heckler, 760 1154, 1158 (11th Cir. 1985) (holding that an ALJ may consider the plaintiff's demeanor when making a credibility determination).

Where an ALJ decides not to credit a claimant's testimony about pain or other, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be

based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

In this case, substantial evidence in the record that were discussed and considered by the ALJ, including medical records, Dr. Berdick's opinion, and Plaintiff's daily activities and work history, supports the ALJ's RFC finding that Plaintiff could perform medium work.

Substantial evidence also supports the ALJ's finding that Plaintiff could perform her past relevant work as a fast food worker after the ALJ properly evaluated Plaintiff's RFC. The claimant bears the burden of proving she cannot perform her past relevant work either as she performed it or as it is generally performed in the national economy. 20 C.F.R. § 416.920(a)(4)(iv), (f). Even though Plaintiff argues that the ALJ erred when he compared the DOT description of Plaintiff's past relevant work with her RFC without providing any discussion of the duties or requirements of Plaintiff's past relevant work, as discussed above, substantial evidence, including the medical records, doctors' opinion, Plaintiff's subjective complaints, and her activities of daily living and work history, supported the ALJ's RFC finding. (Tr. 64-69). Further, Plaintiff did not meet her burden of proving that she cannot perform her past relevant work, as the record indicates that Plaintiff testified that she was diagnosed with depression and anxiety twenty years before the hearing, ast the age of sixteen. (Tr. 202, 269). She claimed that she had "been depressed for years" and always had problems with anxiety. (Tr. 224, 281). However, she worked as a fast food worker, sometimes over forty hours a week (Tr. 201), for many years in spite of her alleged mental impairments. (Tr. 115). Further, Plaintiff testified that she was fired from her past jobs for "various reasons," most recently for not following proper procedures when calling in for leave, which Plaintiff

did not relate to any mental condition - which was noted in the ALJ's opinion. (Tr. 42-44). Therefore, even if the ALJ had assessed limitations stemming from Plaintiff's mental impairments, Plaintiff's ability to work in the fast food industry for years after her diagnoses of mental disorders undermines her allegations of mental limitations that precluded her from performing her past relevant work. Accordingly, evidence supports the ALJ's conclusion that Plaintiff could perform her past relevant work as a fast food worker, and that she was not disabled within the meaning of the Act. Therefore, the Court respectfully recommends that the ALJ's decision should be affirmed.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this __12th___ day of October, 2011.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record